IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Shomari Legghette (K74929), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 C 0149 |
| | ) | |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| Chicago Police Department, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The Court grants Defendants' motion to dismiss for failure to state a claim [89]. Plaintiff's second amended complaint [86] and this case are dismissed. Claims challenging the basis for Plaintiff's seizure are dismissed with prejudice. Claims challenging the force used during the seizure are *Heck*-barred, so are dismissed without prejudice to Plaintiff's ability to pursue the claims if his convictions have been invalidated. The Clerk of Court is directed to (1) enter final judgment; and (2) send a copy of this order to Plaintiff at his address of record. Case closed.

**STATEMENT**

Illinois prisoner Shomari Legghette initiated this *pro se* civil action under 42 U.S.C. § 1983 against the City of Chicago, Commander Paul Bauer, Detective Raymond Haran, and several high level City officials. Legghette alleged that, on February 13, 2018, Haran wrongfully stopped him and Bauer used unjustified force against him. The Court allowed the claims against the officers to proceed past screening and granted Legghette leave to file an amended complaint. Dkt. 10; Dkt. 14. The Court also recruited counsel to assist Legghette, but counsel withdrew after determining he could not proceed consistent with his obligations under Rule 11 of the Federal Rules of Civil Procedure and this Court's local rules. Dkt. 12-14.

Defendants moved to dismiss the first amended complaint. Dkt. 37. The Court stayed briefing on arguments that implicated issues in the then-pending criminal prosecution against Legghette for murdering Bauer, but allowed briefing on Legghette's excessive force claim against Haran to go forward. Dkt. 42. The Court dismissed that claim. Dkt. 48. The Court lifted the stay when Legghette's petition for leave to appeal to the Illinois Supreme Court was denied. Legghette filed a second amended complaint with leave of court. Dkt. 86. Defendants' motion to dismiss the second amended complaint is presently before the Court. Dkt. 89.

**I.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). When considering whether to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court takes the allegations in the complaint as true, viewing all facts and reasonable inferences in the light most favorable to the plaintiff. *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020). The Court also may take judicial notice of matters of public record, such as documents, transcripts, and rulings from other proceedings. *See Guar. Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) (judicial proceedings are noticeable); *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (matters of public record are noticeable); *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (facts recited in plea agreement are noticeable); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (court documents from state proceedings are noticeable).

## II.     Facts Alleged in the Second Amended Complaint[1]

The allegations of the second amended complaint largely track the allegations of Legghette's prior pleadings. On February 13, 2018, Legghette was walking along Lower Wacker Drive in Chicago, Illinois, when an unmarked SUV pulled up alongside him. Dkt. 86, pg. 3. Horan, the passenger in the vehicle, waved at Legghette in a "come here" motion. *Id.* Legghette did not recognize the person, so he "continued on his way jogging toward the Thompson Center." *Id.*

About four blocks down the road, Legghette noticed a man behind him. *Id.*, pg. 3-4. Legghette started to descend the steps in front of the Thompson Center when the man "reached over the rail and grabbed him." *Id.*, pg. 4. A struggle ensued, during which the man allegedly "shoved" Legghette, causing him to fall down the steps. *Id.* Legghette tried to get up, but the man "plunged . . . into his back" and applied a chokehold. *Id.* According to Legghette, the man said, "It's over," It's over for you," "I'm going to blow your fucking head off." *Id.* Legghette was "losing consciousness" when, he says, he had no alternative but to defend himself. *Id.* Legghette learned only later that the man was Chicago Police Commander Bauer. *Id.*, pg. 7. Legghette maintains that the man never announced himself as a police officer, *id.*, and that Bauer was the "aggressor," *id.*, pg. 14. Legghette scraped his hands and knees and sustained a sprained ankle as a result of his encounter with Bauer. *Id*, pg. 4*.* Bauer lost his life. *Id.*, pg. 7.

Legghette insists that there was no reason for a police officer to stop him. *See id.*, pg. 8. In Legghette's view, his encounter with Bauer stemmed from a "baseless APB initiated by" Haran. *Id.*, pg. 7. Legghette contends that Haran initiated the stop because of racial profiling and issued the bulletin because Legghette did not heed Haran's summon on Lower Wacker Drive. *Id.*, pg. 8. Haran never announced that he was a police officer. *Id.*, pg. 7.

Haran testified during Legghette's criminal proceedings that he initiated the stop because Legghette was "urinating, about to urinate, or had just finished urinating." *Id.*, pg. 9. Police radio transmissions after the unsuccessful stop revealed, however, that Haran reported to the dispatch officer that a black male with a long winter coat and fur collar "took off." *Id.*, pg. 5. Haran transmitted Legghette's path until Haran lost sight of him. *Id.* Haran then radioed: "Slow it down squad. I lost him . . . I'm alright." *Id.* When asked what the person was wanted for, Haran said: "It was just a street stop and he took off, he was running from an area where there was a shooting the

---

[1] The facts alleged are, of course, taken as true for the purpose of resolving this motion.

2

other day." *Id.*, pg. 5-6. An unidentified officer subsequently transmitted, "I think I see him Lake and Clark." *Id.* Haran responded, "No, No, No, slow it down . . . I just wanted to ask him some questions. I don't want anyone to get hurt." *Id.*, pg. 6. Haran then asked, "Who was that?," but the officer did not respond and dispatch was unable to identify the voice. *Id.*

According to Legghette, his encounter with Bauer would not have occurred but for Haran's and the dispatcher's "baseless APB." *Id.*, pg. 7-8. The transmission, in Legghette's opinion, caused the officers who heard it to believe that he might be a suspect in a shooting and placed him in danger of "being handled or met with force and aggression." *Id.*, pg. 8. Legghette also contends that Bauer "ignored" Haran's instruction to cease pursuit and that unidentified officer's transmission (which Legghette attributes to Bauer)—"I think I see him"—shows that Bauer did not know that Legghette was the subject of Haran's bulletin. *Id.*, pg. 10-11. Put simply, Legghette contends that Bauer had no probable cause to seize him and, as such, any force employed by Bauer was unreasonable.

### III. State Court Proceedings

Legghette shot and killed Bauer during the events described above, for which he was charged and prosecuted. *See* Dkt. 89-9, *Illinois v. Legghette*, No. 1-20-1253, 2023 IL App (1st 201253-U) (Ill. App. Ct. Nov. 22, 2023). The following findings were made during the criminal proceedings and are relevant to the Defendants' motion to dismiss.

First, the judge presiding over the criminal trial rejected arguments challenging Legghette's arrest and the initial stop. Dkt. 89-7, pg. 14-16. Following the close of the State's case, Legghette's counsel renewed his motion to quash the arrest and suppress evidence based on Haran's radio transmissions. Counsel observed that Haran originally testified that he attempted to stop Legghette for public urination, but recordings revealed that Haran told dispatch he wanted to stop Legghette because "it was a drug area and because there was a shooting a few days ago[.]" *Id.*, pg. 6-7. Counsel then argued that the recordings called into question Haran's reason for the stop, so Legghette's arrest should be quashed and evidence suppressed. *Id.*, pg. 7. The criminal court rejected the argument and denied the renewed motion to quash. *See id.*, pg. 14-16.

Second, Legghette's counsel argued that Legghette did not know Bauer was a police officer and that, when Bauer began struggling with Legghette at the top of the steps, Legghette had to use force to defend himself. *See* 89-9, 1-4. Based on the argument, the criminal court issued a self-defense instruction. *Id.*, pg. 4; *See* Dkt. 89-8 at 21:19-22:11. In response, the State pointed out: "It [presumably a jury instruction] says that a peace officer need not retreat or desist from efforts to make a lawful arrest because of the resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to effect the arrest or to defend himself form bodily harm while making the arrest." Dkt. 89-8 at 22:18-24.

A jury found Legghette guilty of first-degree murder and armed violence. Dkt. 89-9, pg. 2. The jury also found that the State "proved that during the commission of the first-degree murder, [Legghette] murdered a peace officer in the course of performing his official duties and knew, or should have known, Commander Bauer was a peace officers." *Id.*, pg. 4-5.

3

**DISCUSSION**

The Defendants in this civil action argue that the second amended complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for three reasons. First, Defendants argue that the Fourth Amendment seizure claim against Haran should be dismissed because Haran did not succeed in stopping Legghette. Dkt. 89, pg. 7-8. Second, Defendants argue, the doctrine of collateral estoppel precludes the seizure and excessive force claims. *Id.*, pg. 12-15. Third, they argue that the excessive force claim is *Heck*-barred. *Id.*, pg. 9-12.

### A. *Haran's Encounter With Legghette On Lower Wacker Drive*

A seizure for purposes of the Fourth Amendment occurs only when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]" *United States v. Mendenhall*, 446 U.S. 544, 552 (1980). Absent application of force, submission to the assertion of authority by the police is required. *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (no seizure where officer yells "Stop, in the name of the law!" at a fleeing form that continues to flee). A person is seized under the Fourth Amendment "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554. Legghette's allegations show that he felt free to leave (and, in fact, left) when Haran summoned him to the unmarked police vehicle. Haran therefore did not seize Legghette in violation of the Fourth Amendment during the encounter on Lower Wacker Drive.

### B. *Collateral Estoppel*

Legghette's claims about the events at the Thompson Center hinge on his assertion that there was no lawful reason to stop him in the first place. *See* Dkt. 86, pg. 7-10; Dkt. 93, 95. He argues that Haran's radio transmission constituted a "constructive detention" that was not supported by reasonable suspicion or probable cause. Dkt. 93, pg. 2; Dkt. 95, pg. 3. Because, in Legghette's opinion, Haran did not have legal justification to detain him on Lower Wacker Drive, Haran and the dispatcher should be held responsible for what occurred when Bauer attempted to stop Legghette at the Thompson Center. *See id.* Put differently, if the events relayed by Haran over the police radio did not support a seizure, then Bauer's attempt to detain Legghette at the Thompson Center—and everything that happened after—was unjustified and "de facto excessive." *See* Dkt. 86, pg. 11; Dkt. 93, 95. Legghette's theory, however, does not account for the rulings from his criminal proceedings.

Federal courts must accord "the same full faith and credit" to a state court decision as the state would give that decision. 28 U.S.C. § 1738. The doctrine of collateral estoppel, or issue preclusion, bars re-litigation of an issue that previously was decided by a court so long as the party against whom the doctrine is asserted had an opportunity to fully litigate the issue. *Riley v. Calloway*, 882 F.3d 738, 742 (7th Cir. 2018) (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). As relevant here, collateral estoppel may bar a litigant from bringing a Fourth Amendment seizure claim under section 1983 where the litigant raised and lost on the same issue in state court. *Allen v. McCurry,* 449 U.S. 90, 104–05 (1980); *see, e.g., Cameron v. Patterson*, No. 11 C 4529, 2012 WL 1204638, at *2-4 (N.D. Ill. Apr. 10, 2012) (dismissing claim in civil rights lawsuit challenging

4

basis for traffic stop and vehicle search where judge presiding over plaintiff's state-court criminal proceedings rejected identical arguments on a motion to quash arrest and suppress evidence).

Federal courts must apply the state's rule for collateral estoppel. *Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010). Under Illinois law, an issue that was litigated in a prior action may not be relitigated if: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication." *Id.*

Transcripts from Legghette's criminal trial reveal that he is attempting to advance, in this civil lawsuit, the same argument about his seizure that the judge presiding over his criminal proceedings rejected. Following the State's case-in-chief, Legghette's defense counsel renewed a motion to quash arrest and suppress evidence, arguing:

> The whole thing originated with Detective Haran's (inaudible) probable cause for arrest when he was downstairs on lower Wacker, and that there was urinating or an attempt to urinate – that he would still have reasonable suspicion at that point . . . . So we hear that, he's asked by the police on the dispatch why he was trying to stop Mr. Legghette. He said, because I wanted to ask him about the shooting, and because I, it was a high drug area . . . and there's no mention of urinating or attempting to urinate. So it's not credible that it even started, the incident even started with any reasonable suspicion of probable caution [sic].

Dkt. 89-7, pg. 6-7. The criminal court denied Legghette's motion, explaining:

> The court has considered Officer Haran's testimony as part of the motion [and] the testimony he has provided as part of the trial proceedings. The court finds that his testimony both establishes that he was in the lower Wacker area driving with his partner [], that he observed the defendant near a pillar in that area, either urinating or appearing to urinate. That he stopped the defendant with respect to that act, which in and of itself is a, quote, violation, and he directed the defendant over by saying, hey, I want to talk to you, at which point the defendant turned and took the stairs up at a clip to remove himself from the presence of the officer.
>
> The court finds no variation in the testimony provided at the motion to quash hearing . . . . The court does, having given due consideration to the defense motion finds that there is no basis to grant the motion to quash after hearing the additional evidence a trial[.]

*Id.*, pg. 15-16.

The elements for application of collateral estoppel have been met: (1) the challenge to the seizure that Legghette asserts in this civil action is identical to the argument that the judge presiding over his criminal proceedings rejected; (2) there was a final judgment on the merits when the jury convicted Legghette; and (3) Legghette was a party to the criminal proceedings. He had an

5

opportunity to appeal, and the appeal is final. *See Illinois v. Legghette*, No. 1-20-1253, 2023 IL App (1st) 201253-U (Ill. App. Ct. Nov. 22, 2023). Thus, collateral estoppel precludes any claim that Haran's radio transmission constituted a "constructive detention" as well as any claim that Bauer's attempt to stop Legghette at the Thompson Center was not legally justified.

Collateral estoppel also bars Legghette's excessive force claim to the extent he contends that any force whatsoever by Bauer was excessive because Bauer had no legal reason to seize him. Dkt. 86, pg. 11 (characterizing Bauer's use of force as "*de facto* excessive").

### C. Heck v. Humphrey

The Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477 (1994), that a plaintiff in a civil rights action may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless or until the conviction has been set aside. *Id.* at 486-87. "A claim for damages bearing that relationship to a conviction . . . that has *not* been so invalidated is not cognizable under section 1983." *Id.* at 487 (emphasis in original). If judgment in the plaintiff's favor "would necessarily imply the invalidity of his conviction . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction" has been invalidated. *Id.* The relevant inquiry is not whether the plaintiff disavows a challenge to his criminal conviction, but whether the allegations, if true, are "inconsistent with the conviction's having been valid." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003); *see Tolliver v. City of Chicago*, 820 F.3d 237, 244 (7th Cir. 2016) (same).

Legghette's convictions for first degree murder and armed violence have not been set aside. The Court therefore must consider whether his excessive force claim necessarily implies the invalidity of the convictions.

The Court focuses on the first degree murder conviction and Legghette's self-defense argument. In Illinois, a person commits first-degree murder when he "kills an individual without lawful justification" and, in doing so, he: (1) intends to kill or cause great bodily harm to the individual; (2) knows that his conduct creates a probability of death or great bodily harm to the individual; or (3) he causes the death of a person during the course of a forcible felony for flight therefrom. 720 ILCS 5/9-1. "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of *unlawful* force." 720 ILCS 5/7-1 (emphasis added).

Legghette maintains in his second amended complaint that Bauer was the aggressor and that he did not know Bauer was a police officer. As a result, Legghette says, he had no choice but to defend himself when Bauer grabbed him, which led to a scuffle on the stairs and the alleged shove that sent Legghette tumbling down the stairs and purportedly put him in fear for his life. The problem here is that a finding in Legghette's favor—*i.e.*, acceptance of Legghette's version of events as true—would call into question the jury's rejection of his self-defense argument and the implied finding that the force Bauer used to detain Legghette was justified. The version of events favored by Legghette also calls into question the jury's implicit finding that he knew or should have known that Bauer was a police officer who was performing his official duties. *Cf. Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014) (explaining that where conviction requiring proof that

6

officer was "lawfully engaged in the performance of his duties," necessarily meant that the officer was not employing excessive force).

The facts and theories alleged in the second amended complaint, as well as Legghette's response to Defendants' motion to dismiss, show that he seeks to base his excessive force claim on facts and arguments that were rejected during his criminal proceedings. *See* Dkt. 86, 93, 95. But where, as here, the facts relied on by the plaintiff call into question the grounds for his conviction, the excessive force claim must be dismissed. *See Moore v. Mahone,* 652 F.3d 722, 723 (7th Cir. 2011) ("*Heck* forbids a prisoner in his civil rights case to challenge a finding in his criminal [] case that was essential to the decision in that case; if he insists on doing that, the civil rights case must be dismissed"); *Okoro*, 324 F.3d at 490 (where a civil rights plaintiff asserts a theory of liability that denies the findings and rulings in his criminal case, his claim is *Heck*-barred).

In sum, Legghette's excessive force claim cannot proceed so long as his convictions remain valid. *See, e.g., Johnson v. Reiter*, No. 14 C 1522, 2015 WL 6674531, at *5 (N.D. Ill. Oct. 30, 2015) (collecting cases holding that *Heck* bars excessive force claims that are inconsistent with underlying state court convictions); *Douglas v. Vill. of Palatine*, No. 17 C 6207, 2020 WL 1469439, at *3-4 (N.D. Ill. Mar. 26, 2020) (finding excessive force claim *Heck*-barred where plaintiff's version of events relied on allegations that were inconsistent with facts supporting his conviction); *Garrett v. Needleman*, No. 16 C 1062, 2017 WL 2973481, at *4 (N.D. Ill. July 12, 2017) ("A finding that defendants resorted to force for no reason would necessarily impugn plaintiff's underlying convictions [for aggravated assault of a peace officer].").

### IV.     Conclusion

Defendants' motion to dismiss is granted. Further amendment is not warranted. When he drafted his second amended complaint, Legghette had the benefit of Defendants' briefing on their initial motion to dismiss *see* Dkt. 37, but the second amended complaint did not cure the defect in his claims. In addition, a lawyer recruited to assist Legghette in this civil action represented that he could not represent Legghette consistent with his obligations under Rule 11 of the Federal Rules of Civil Procedure after reviewing the trial transcripts and rulings in Legghette's criminal proceedings. *See* Dkt. 12. The Court therefore is satisfied that further amendment would be futile.

Accordingly, the Court dismisses the second amended complaint and this case in their entirety. *See Hightower v. Godinez*, 524 F. App'x 294, 296 (7th Cir. 2013) ("[A] district court does not abuse its discretion by declining to permit futile amendments."). Claims challenging the basis for Legghette's seizure are dismissed with prejudice. Claims challenging the force used during the seizure are *Heck*-barred and, as such, are dismissed without prejudice to Legghette's ability to pursue those claims if his convictions are ever invalidated.

Final judgment shall enter. If Plaintiff seeks to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If Plaintiff seeks leave to proceed *in forma pauperis* on appeal so that he may pay the appellate filing fee in

installments, he must file a motion seeking leave to do so in this Court. *See* Fed. R. App. P. 24(a)(1). Any such motion must include his intended grounds for appeal. This case is terminated.

Date: 5/23/25                                   /s/ John J. Tharp, Jr.
                                                John J. Tharp, Jr.
                                                United States District Judge